PER CURIAM, January 3, 1916:

The sole question on this appeal is whether the plaintiff was bound by the amendment of defendant's by-laws, made in 1895, which provides for the payment yearly, upon arrival at the period of physical disability, of one-twentieth of the amount specified in the benefit certificate, instead of the payment of one-half of the amount therein specified. That certificate, issued by the appellant to the appellee, on September 1, 1889, constituted the contract between them, and there is nothing to be found in it, or in the application for it, signed by the appellee, to justify the attempt of the appellant to impair or alter the terms of the contract. It is true that the appellee stipulated that compliance on his part with all the rules, regulations and requirements then in force, or that might thereafter be enacted by the association, was the express condition upon which he was to be entitled to participate in the beneficiary fund, but that stipulation was not that the association might radically change the terms of its contract: Hale v. Equitable Aid Union, 168 Pa. 377; Hayes v. German Beneficial Union, 35 Pa. Superior Ct. 142; Supreme Council of American Legion of Honor v. Getz, 112 Fed. Repr. 119. Upon the authority of these cases the court below correctly held that the plaintiff was entitled to recover the sum for which he sued.

Judgment affirmed.

---

# White, Appellant, v. First National Bank of Pittsburgh.

*Contracts—Corporations—Banks—Agreement to extend credit to corporation—Breach—Stock—Destruction of value—Stockholders —Right of action—Statement of claim—Demurrer.*

In an action against a bank for destroying the value of plaintiff's stock in a corporation through breach of a contract to extend credit to the corporation, it appeared from the statement of

claim that the bank had agreed that upon the organization of a corporation to take over plaintiff's business it would loan a certain sum to the corporation upon its promissory note; that the corporation was organized with plaintiff as principal stockholder, and the loan made to it as agreed; but that upon the maturity of the note further credit was refused in violation of an agreement between such corporation and defendant; that the corporation in consequence became bankrupt and the value of plaintiff's stock was destroyed. On demurrer to the statement the court entered judgment for defendant. *Held,* that the right of action for whatever wrongs resulted from defendant's breach of contract was in the corporation not in plaintiff, and the judgment was affirmed.

Argued Oct. 25, 1915.  Appeal, No. 153, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1915, No. 1493, sustaining the demurrer to plaintiff's statement of claim in case of B. White v. First National Bank of Pittsburgh, a corporation.  Before MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.  Affirmed.

Assumpsit for breach of verbal contract to extend credit.

The facts appear in the following opinion of SWEARINGEN, J.:

B. White brought this action of assumpsit against the First National Bank of Pittsburgh, a corporation organized under the laws of the United States, to recover damages for the breach of a contract.  To the plaintiff's statement of demand the defendant has filed a demurrer; and upon the disposition thereof all his material averments of fact are, of course, to be taken as true.

For a long time prior to February 10, 1911, the plaintiff had been engaged in the furniture and carpet business in the City of Pittsburgh, North Side.  Desiring to conduct a general department store, he erected an eight story building upon his lot at the corner of Sandusky and Ohio streets.  He planned the organization of a corporation to be called the B. White Company, to

which he intended to transfer his said lot, building and business and the issue of preferred stock of this corporation in the sum of $500,000, which was to be sold for the purpose of acquiring additional capital for said business.  About February 1, 1911, the plaintiff applied to the defendant for a loan of $25,000, and during the course of the negotiations, he informed it of his said plans, and of his having obtained subscriptions for part of the preferred stock, upon which some money had already been paid.  The cashier, F. H. Richards, suggested that the best time to sell the preferred stock was after the corporation had been organized and the business was in full operation, and he proposed that the plaintiff borrow $60,000, which should stand as a loan until at least six months after the store had been entirely completed and the business started.  An opportunity would thus be given for the sale of said preferred stock.  This period of six months was to begin at the opening of the store, which was to be not later than September, 1911.  The plaintiff declined to make a loan of $60,000, but it was finally agreed that he would borrow $50,000, upon the terms, inter alia, that he would keep on deposit in said bank 20% of the loan, or of the amount to which it might be later reduced; that he would give his promissory note for the loan, which was to be renewed from time to time during said period; and that, when the corporation should be organized and had taken over the business, its note should be substituted for his and he would endorse the same.

Pursuant to said agreement, the plaintiff gave his note for $50,000 to the defendant, dated February 10, 1911, opened an account and kept on deposit 20% of the loan.  The B. White Company was duly incorporated and organized, and the plaintiff transferred to it his said business and property, the same having at that time a net value of more than $518,000, for which he received common stock in that amount.  When the note above mentioned fell due, on June 10, 1911, the note

of the B. White Company was substituted therefor and the plaintiff endorsed it, and the deposits were continued as had been stipulated. The said department store was formally opened on September 14, 1911.

On October 5, 1911, Oscar L. Telling, the president of the defendant bank, gave notice that the payment of said note would be demanded at its maturity, to wit, October 10, 1911, and said "if it was not then paid he would push the corporation to the wall." Thereafter, it was agreed that, if there should be paid $10,-000 on account of said note, at its maturity, and a new note given for $40,000, upon which $1,000 should be paid each week until the whole should be discharged, the defendant would not demand payment of the entire loan of $50,000. At that time the B. White Company had on deposit with the defendant $16,226.18. In consequence, the B. White Company continued its deposits with the defendant, was ready and willing to pay the sum of $10,000 and give a demand note for the balance, which the plaintiff would have endorsed, and to pay $1,000 each week thereafter; and both the plaintiff and the B. White Company, on October 10, 1911, offered to consummate the agreement last above recited. Nevertheless, the defendant refused to comply with the same, demanded payment of the entire loan, refused the plaintiff's offer to waive protest, but did protest the note and credited thereon the aforesaid deposit of $16,288.18. Immediately afterwards the defendant inquired of creditors of the B. White Company as to its promptness in payment, and communicated the fact of the protest of said note. The defendant also threatened the B. White Company with legal process, and other creditors were frightened into doing the same thing, and the financial credit of the B. White Company, which was of the best character, was thereby destroyed, and it was forced into bankruptcy. The assets were sold, the good will of the business was destroyed, and there was not sufficient realized to pay the debts. The plaintiff averred that,

prior to the protesting of said note, the assets of the B. White Company exceeded its liabilities more than $400,000.00 and that, if they had been converted in the usual course of business, such an amount would have been realized.

The trustee in bankruptcy of the B. White Company has filed its account, the assets have been distributed, and the trustee has been discharged. The trustee did not pursue any claim against the defendant on behalf of the B. White Company on account of the grievances aforesaid, but has abandoned the same.

The plaintiff, "having shown that he has sustained loss and damage through the said unauthorized and illegal acts of the said defendant, in the sum of $400,000.00 and upwards," brought this suit to recover the same. He did not aver that he had suffered any damage, except what resulted from the aforesaid destruction of the value of his stock, substantially all of it, in the B. White Company.

As before stated, the defendant filed a demurrer to the plaintiff's statement of demand. In the view we take of the case, it is not necessary to consider any of the assignments, except the first and fifth, which we regard as decisive. They are as follows:

"(1) The said statement of demand discloses no right of action in this plaintiff. Such right, if any, would be in the B. White Company.

"(5) The alleged breach of contract upon the part of the defendant does not appear to have been the proximate cause of the damage alleged to have been sustained."

The original contract between these parties may be briefly stated as follows:

B. White agreed to borrow from the defendant, and it agreed to lend him $50,000.00, upon his note, which should stand as a loan until six months after September, 1911; during this period, the note was to be renewed from time to time; he was to keep on deposit in the de-

fendant bank 20 per cent. of the loan, or of the amount to which it might be reduced; when the B. White Company, a corporation then in contemplation of the parties, should be organized, its note was to be substituted for his, which was to be endorsed by him.

This was a contract, not only for the loan of money upon collateral during a specified period, but also for the substitution of a new contract and of another debtor later. It was likewise a contract for the benefit of the B. White Company, when that corporation should come into existence. The plaintiff was its promoter. The contract was one which the corporation could have assumed, and the subsequent transactions are conclusive that this did occur. What the parties thereafter did, the plaintiff, the defendant and the B. White Company, distinctly shows that their interpretation was the same as we have indicated. The B. White Company was organized and the plaintiff transferred his property to it. When his note fell due, the B. White Company gave its note endorsed by him to the defendant, which was accepted, and deposited its money in place of his deposit, and this was also accepted. These transactions must be regarded as in the nature of a novation, which arises, either when a new debtor is substituted for a former one, or when a new contract takes the place of a former one, with the consent of all parties. In either event, the prior obligation is extinguished.

After the consummation of this new agreement, on June 10, 1911, what obligation under the original contract remained as between the plaintiff and the defendant? None whatever that we can perceive. The defendant could not longer have maintained an action upon the plaintiff's note, because that of the B. White Company had been substituted. The defendant could no longer have demanded a deposit from him, because the deposit of the B. White Company had taken its place. The plaintiff could no longer have demanded a renewal of his note, because the note of the B. White Company

was the only one thereafter to be renewed.   Clearly, the new contract was substituted for the old one, the B. White Company took the plaintiff's place as the debtor, and all three parties consented.   It follows that the original contract was extinguished and was merged into the one made June 10, 1911; and this was exactly what the plaintiff and the defendant had stipulated should occur.   If, therefore, no obligation of the original contract remained, it is plain that no action whatever can be founded thereon.   Hence we must look elsewhere for the basis of this suit.

What, then, were the respective positions of these parties, relative to this substituted contract?   Undoubtedly the defendant and the B. White Company were the principals.   They were the sole parties between whom direct contractual obligations were thereby established.   It is equally undoubted that the only relation in which the plaintiff stood was that of endorser upon the note of the B. White Company.   He assumed no other responsibility.   The defendant never could have pursued him except in that capacity.   If this be true, what right of action has he, the endorser of the note, against the defendant for the latter's breach of its agreement to extend the loan?   We know of none.   Such an action might be maintained by the principal debtor, but surely not by a mere endorser.   It might be that, if the defendant sued him upon his endorsement, he could plead its violation of the agreement, whereby he became endorser, and his consequent release.   Upon that proposition we express no opinion, because the question is not involved here.   But there is no averment that he has been pursued; none that he ever has been or ever will be compelled to pay anything by reason of his endorsement.

Nor can we discover that the plaintiff's position was changed in any respect, by the new arrangement made in October, 1911.   At that time, about October 5, 1911, it was agreed that the B. White Company would pay $10,-000.00 upon its note, would give its demand note for the

balance of $40,000.00, which the plaintiff would endorse, would pay $1,000.00 per week thereafter upon the loan, and would maintain the said deposit. This was an agreement between the defendant and the B. White Company. They were the principals. The defendant was to be the endorser of the note of the B. White Company—nothing more. Clearly, the above stated modification of the agreement made no change in the respective contractual relations of the parties.

There is, therefore, no contract pleaded in the statement of demand, upon which this action of assumpsit can be maintained by the plaintiff against the defendant. The original was merged into the new one on June 10, 1911. To this, he was not a party principal. Neither was he to the modification thereof in October, 1911. Hence he cannot base this action upon any of these agreements; and he has alleged no other.

But, when the acts of the defendant of which the plaintiff complains are considered, it is certain that the view we have taken is correct. All of them related to the B. White Company alone. The defendant refused to continue the loan of the B. White Company, not that of the plaintiff; its note, not the plaintiff's was wrongfully protested; its deposit, not the plaintiff's, was illegally appropriated; and the destruction of the credit and the sacrifice of the property of the B. White Company resulted. Every one of these wrongs was an injury to the B. White Company, for which it alone is entitled to sue and recover, if anybody can. If, then, the right of action is in it, how can the plaintiff also maintain an action for the same cause? If he can, the defendant will be compelled to pay twice for the same injury. There must be something wrong with a proposition which leads to such a result.

The plaintiff has attempted to evade this difficulty by averments, that the receiver in bankruptcy of the B. White Company has abandoned any claim, which it might have against the defendant, and that the receiver

has been discharged.   But the bankruptcy of that corporation did not work its dissolution: Collier on Bankruptcy, 72.   There is no averment in the statement of Demand that the B. White Company has been dissolved. It must, therefore, be regarded as still in existence, at least for the purpose of redressing any wrongs it has suffered.   In any event, the plaintiff is but a stockholder of the B. White Company.   As such, he does not represent it and cannot sue for its demands, even though he owns substantially all of the stock, as he does.

But the plaintiff is not endeavoring in this action to recover on behalf of the B. White Company.   He is seeking a personal judgment against the defendant.   He has laid no damages, except those which resulted to him by reason of the destruction of the value of his stock in the B. White Company.   How, then, can he succeed in this action?   It was argued that the question of the measure of damages cannot be raised upon a demurrer.   This is true as a general proposition.   But the plaintiff has averred no injury to himself, except the indirect one above stated.   These damages, as we have shown, he cannot recover because the right thereto is in the corporation, if in anybody.   He cannot recover nominal damages, because, as we have shown, there was no contractual obligation binding the defendant to him, which was broken.

We have examined the cases cited by the plaintiff, including the two upon which he specially relies.   These two are Bank of Commerce-v. Bright, 77 Fed. Repr. 949, and Ritchie v. McMullen, 79 Fed. Repr. 522.   We do not think that either of these cases is at variance with the conclusions reached.   There can, of course, be no doubt that a stockholder can maintain an action, where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract, or otherwise, and owing to him directly. That principle, it seems to us, is all that these cases rule. But the difficulty with the plaintiff's case is that he has

failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder.

The court sustained the demurrer to the plaintiff's statement of claim and entered judgment for defendant. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*Charles H. Sachs,* with him *Reed, Smith, Shaw and Beal,* for appellants.

*George E. Alter,* of *McKee, Mitchell & Alter,* for appellee.

Per Curiam, January 3, 1916:

The judgment is affirmed on the opinion of the learned court below sustaining the demurrer to the plaintiff's statement.

---

# Kleine *v.* Pittsburgh Railways Company, Appellant.

*Negligence—Street railways—Passenger—Jolt of car—Evidence—Damages—Unmarried woman—Earning power—Inability to perform household duties—Case for jury.*

1. Where an issue involves the rate of speed of a street car, mere statements that the car was running fast, pretty fast, awful fast, or similar language, are insufficient to establish negligence; but a jolt caused by the abrupt stopping of a car is sufficiently described by the use of general terms followed by evidence of the general effect of the jar on the passengers. The severity of the jolt and its effect are questions for the jury.

2. A woman's inability to perform household duties at her home, as the result of an accident, is an element of damage in an action for personal injuries.

3. In an action by a passenger against a street railway company to recover damages for personal injuries, the case is for the jury and a verdict and judgment for the plaintiff will be sustained