**CULLUM et al. v. GENERAL MOTORS ACCEPTANCE CORPORATION et al.**

No. 4873.

Court of Civil Appeals of Texas. Amarillo.

March 21, 1938.

Rehearing Denied May 2, 1938.

Works & Bassett and Clem Calhoun, all of Amarillo, for appellants.

Simpson, Dorenfield & Fullingim and E. H. Foster, all of Amarillo, for appellees.

STOKES, Justice.

This suit was filed in the district court of Hutchinson county by the appellant, Dyke Cullum, on the 23d of June, 1933, and afterwards, by agreement of the parties, transferred to and filed in the 108th district court of Potter county. On the 8th of January, 1937, appellant filed his fourth amended original petition, to which appellees filed a general demurrer and a large number of special exceptions. The general demurrer was overruled, but a number of the special exceptions were sustained, which action of the court practically destroyed the cause of action pleaded by appellant and he declined to amend. The court thereupon dismissed the case, to which appellant duly excepted and has perfected an appeal to this court upon a number of assignments of error in which he complains of the action of the trial court in sustaining the special exceptions and dismissing the case.

In his fourth amended original petition appellant alleged that on or about the 22d of June, 1928, he was the duly constituted sales agent and local dealer of appellee Chevrolet Motor Company of Texas, his territory including the city of Borger and territory adjacent thereto, and that on or about the 2d of May, 1931, he was succeeded as such agent and dealer by Main Chevrolet Company, a closed Texas corporation, which he organized, financed, and conducted, and in which he was interested. He alleged that the Main Chevrolet Company continued as such agent and dealer until October 1, 1931, and that he, individually, and the Main Chevrolet Company carried on and conducted a general automobile and garage business, engaging in the sale and distribution of motor

vehicles, handling, furnishing, and selling parts for such motor vehicles, and carrying on a general parts and repair department, all in accordance with sales agents' and local dealers' agreements with the Chevrolet Motor Company; appellant conducting the same from June 22, 1928, until May 2, 1931, and the Main Chevrolet Company conducting it from that date until October 1, 1931. He alleged that in connection with the sales agency arrangement and as a part of the same transaction by which he was constituted the local dealer, he was required by the Chevrolet Company to arrange a line of credit with appellee General Motors Acceptance Corporation to handle conditional sales contracts taken on the sales of motor vehicles to his customers, which line of . credit was ultimately extended to $50,000; such arrangement being under what was known as GMAC Retail Plan No. 1. He alleged further that the original dealer's agreement was renewed and extended annually from August 1, 1928, to August 1, 1931. The corporation organized by him known as Main Chevrolet Company was created on May 2, 1931, and at that time the agreement was terminated between appellant and the Chevrolet Motor Company and a duplicate contract entered into between the Chevrolet Motor Company and the Main Chevrolet Company, a corporation, which continued on with the business until August 1, 1931, when same was again extended and renewed by the Chevrolet Motor Company with the Main Chevrolet Company for another year; the renewals and extensions being in accordance with the original agreement between appellant and the Motor Company of June 22, 1928. He alleged that upon each renewal and extension of the agreement all of the provisions of the original agreement of June 22, 1928, as to the handling of conditional sales contracts for the unpaid purchase price of motor vehicles, and for providing and maintaining a line of credit, which provisions were both verbal and written, were each and all brought forward, renewed, and made a part of each extension agreement, and continued to constitute the agreement between the interested parties until the relationship was finally ended on October 1, 1931.

Further allegations were to the effect that both of the appellees, viz., the Chevrolet Motor Company of Texas, a corporation, and General Motors Acceptance Corporation, are subsidiaries of General Motors Corporation; the Motor Company being the sales or distributing agency and the Acceptance Corporation being the financing agency of the General Motors Corporation, and that both of appellees were jointly and severally interested in the local dealer's business at Borger in which appellant was interested, both individually and as a stockholder in the Main Chevrolet Company. He alleged that in the arrangement between them, the Acceptance Corporation agreed to follow up and keep the local dealer advised of delinquencies of purchasers of motor vehicles from the local dealer, and to co-operate with him in making collections and repossessing cars where necessary, and that the plan or agreement under which the relationship existed provided for insurance against fire, theft, conversion, confiscation, and collision, and for a reserve fund to be maintained for the benefit of the local dealer.

It was further alleged that the plans under which the relationships existed were printed memoranda, referred to and made parts of the more general and comprehensive agreements between the parties, which agreements were partly verbal and partly made up of such printed memoranda, and that upon the execution by the purchasers of motor vehicles sold on credit of conditional sales contracts to appellant during the terms of his local dealer's contracts and to the Main Chevrolet Company from May 2, 1931, to October 1st of that year, it was the general custom to assign such conditional sales contracts to the Finance Corporation as collateral and as evidencing appellant's indebtedness to it, he recommending and guaranteeing performance of such contracts, and that during all said time appellant, during his tenure, and the Main Chevrolet Company, during its tenure, so transferred, guaranteed, and became liable for the payment of such contracts; the consideration for such assignments and indorsements being the verbal promise and agreement of the Finance Corporation to advance and loan the amounts represented thereby as part of the line of credit provided for in the plans under which the relationship was carried on.

In addition to the written memoranda and written provisions of the contracts and agreements, appellant alleged that on or about the 1st of August, 1929, it was verbally agreed that appellant should have the right and it should be his duty to

make all repossessions of automobiles theretofore sold that he deemed proper and necessary, and that he should keep in touch with the purchasers and make collections from them and assist the Acceptance Corporation, and it would assist him in every way possible to collect the amounts due on all outstanding conditional sales contracts, and it would furnish him with statements of payments made upon them and balances due thereon; that it would send one of its agents as a collector to the city of Borger twice each month to assist appellant in the collection of all moneys due under the contracts, especially those individually guaranteed by appellant, and that under this arrangement a large number of such conditional sales contracts involving many vehicles and large sums of money were handled to the great profit of appellant and also to the benefit and profit of the Main Chevrolet Company, as well as that of appellees, and that all of such terms, provisions, and obligations remained in full force and effect during all the time the relationship existed. Appellant alleged that he, personally, as well as an officer and stockholder in the Main Chevrolet Company, fully kept and performed all of the agreements and obligations resting upon him until they were breached, repudiated, and abandoned by appellees on or about the month of July, 1931, and that after that date he fully performed all of such agreements which arose prior to May 2, 1931, the date upon which the Main Chevrolet Company was organized as a corporation.

Further allegations of appellant were to the effect that the local dealer's business at Borger was incorporated into Main Chevrolet Company, with the understanding and agreement with appellees, through their agents and representatives, that same would not be liquidated as a business under the sales agreement on account of such incorporation, but that it would be carried forward by the Main Chevrolet Company without liquidation or change in method of operation, and that thereafter appellees pursued the business in accordance with that understanding; that from and after the 1st of July, 1931, the appellees, each acting for itself and also conspiring and confederating with each other, undertook to destroy appellant's business standing and to drive him, individually, out of business, and to destroy the business of the Main Chevrolet Company and the value of its capital stock; that pursuing such design and conspiracy, appellees breached, violated, and repudiated the contracts and agreements theretofore made with appellant, including some of those made before May 2, 1931, with appellant individually, and that the Acceptance Corporation refused to make payments to him from the cash reserve fund on hand after May 2, 1931, in accordance with the agreement with appellant individually and the custom and general course of business theretofore followed in regard to such payments, and failed and refused to send a collector to Borger twice each month to assist in the collection of delinquent payments on conditional sales contracts, including a large amount thereof guaranteed individually by appellant, and refused to furnish appellant with statements of payments made on such contracts or balances due thereon by purchasers whose contracts had been guaranteed by appellant, and denied to appellant, individually, the right to collect delinquencies or pursue the repossession of automobiles when necessary to do so in protection of the guarantees which appellant personally had made upon such conditional sales contracts.

He alleged that in further violation of its agreements and in pursuit of the alleged conspiracy to destroy his individual business standing, the Acceptance Corporation wrote and mailed letters to those who had purchased auomobiles through the local sales agency upon credit and were still indebted thereon, including those who were indebted upon conditional sales contracts guaranteed by appellant individually, and also those guaranteed by Main Chevrolet Company, instructing such purchasers to make payments directly to the Acceptance Corporation or its agents who were authorized to deliver official receipts therefor out of its regular receipt book, thus, in effect, depriving appellant of his rights under the agreement existing between the Acceptance Corporation and appellant allowing him to make such collections and conduct the business in such way as to protect his guarantees and those of the Main Chevrolet Company on such contracts, which rights and privileges so denied were important and valuable to him because there were outstanding at that time conditional sales contracts upon which he was personally liable as indorser, and

upon which payments were due and becoming due amounting to about $20,000, which were not fully paid until in 1933.

It was alleged that the letters above referred to were written by the Acceptance Corporation on or about the 14th of July and the 6th of October, 1931, to about 400 persons who were debtors upon the conditional sales contracts; the form letter being copied in the petition. It was alleged that these letters and statements were especially hurtful to appellant individually, and to his individual business and business standing, because under the agency agreements he and the Main Chevrolet Company had been making collections and receiving payments at their place of business at Borger by mail and otherwise on the contracts by the parties to whom such letters were addressed, many of which contracts were made prior to May 2, 1931, when the Main Chevrolet Company was organized as a corporation.

Further allegations were to the effect that while the differences between appellant and appellees occurred in the main after May 2, 1931, yet most of them and practically all of the hurtful acts and damaging statements on the part of appellees grew out of and were based upon dealings, contracts, and obligations prior to that date, and that appellant had large business interests and holdings at Borger other than his interest in the Main Chevrolet Company, including substantial property holdings and the building in which the sales agency was conducted which he had specially built and constructed for the operation of the business, and also personal loans, including $35,000 loaned to the appellee Acceptance Corporation, and that his general business standing was of much greater value to him than all of his interest and capital stock in the Main Chevrolet Company.

In addition to the foregoing acts, conduct, hurtful and damaging things which were done by appellees, the petition alleged that by word of mouth, through their agents and representatives, appellees made statements to various and sundry parties that appellant was unworthy of trust and dishonest; that he was a crook, and cautioned them against dealing with appellant or making any payments on such contracts to or through him, all of which destroyed the confidence in appellant that was entertained by those to whom such statements were made, causing them to cease to deal with or in any way trust him; and that such statements were made to other automobile dealers and those engaged in other lines of business with whom appellant, individually, and the Main Chevrolet Company had dealings, all to his great hurt and damage, both individually and as a stockholder in the Main Chevrolet Company; that they encouraged, aided, and abetted in the establishment and maintenance of a competitive dealer in Chevrolet motor vehicles at Borger when there was no reasonable opening for such additional dealer, with the purpose and declared intention of injuring and destroying appellant's business and his business standing; and that they declared their purpose so to do and to put him out of the automobile business.

Appellant alleged that such statements and conduct of appellees toward him were calculated to, and did, damage and injure him and his business standing, individually, as well as the business of the Main Chevrolet Company, and damaged him as a stockholder in it.

In reference to the status of the Main Chevrolet Company, a corporation, the petition alleged that certain certificates of the capital stock were issued to his brothers, J. R. Cullum and F. C. Cullum, but that immediately on the issuance of such certificates on May 2, 1931, they were indorsed back to him, and have since been held by him. He alleged that, upon the discontinuance of the sales agency, all operations of the Main Chevrolet Company were abandoned; that it owed no debts and was abandoned and wound up about October 1, 1931; its only obligations at that time being such as were created by its liability as guarantor and indorser of the conditional sales contracts to the Acceptance Corporation, which was not such creditor or in position to object to the action of the stockholders and officers in abandoning and closing the business of the corporation, regardless of the matter of its formal dissolution; that no franchise tax was paid except on requirement of the Secretary of State as a condition for receiving and approving a certificate of dissolution, and that its right to do business or prosecute a suit in court was forfeited for nonpayment of the franchise tax due in March, 1932, which forfeiture remained in effect until March 25, 1933, when the unpaid franchise tax was remitted to the Secretary of State, and in June, 1933, a certificate of dissolution was mailed but not received by the Secretary of State, and when he was so informed in September, 1934, the franchise tax was again paid up to May 1, 1934. That on November 13, 1934,

appellant received from the Secretary of State a certificate of dissolution of the corporation bearing date May 1st of that year, showing that agreement and consent in writing of all the stockholders had been filed in the department, and that they consented and agreed that the corporation be dissolved. He alleged that he would not have paid the franchise tax after October 1, 1931, had it not been for his desire to have the action of the stockholders approved by the Secretary of State, and that so far as he or any of the stockholders knew or understood the right of the corporation to do business ended on July 31, 1932, on account of failure to pay the franchise tax.

The petition alleged that prior to the acts, conduct, and hurtful things and statements done and made by appellees he, individually, had built up and maintained a good and valuable business standing and prosperous and valuable businesses in Borger by a course of honest, high-minded, and courteous business conduct, and both he and the Main Chevrolet Company in which he was interested were of good reputation as to honorable and fair dealing, and enjoyed the business patronage of a large number of the citizens of the community, to their great advantage and profit; that from such businesses he, individually, had theretofore been making and realizing a profit of about $20,000 per year, and would have continued to enjoy such reputation and business standing and the making of large profits from such business standing and businesses but for the hurtful acts and false statements so made and circulated by appellees and each of them which caused many people to lose confidence in him, individually, and in his businesses, and to cease dealing with him. He alleged that the proximate result of such wrongful acts and the execution of the alleged conspiracy and breaching and violating the contract obligations and in making, insinuating, and declaring such false and hurtful statements by appellees, appellant's standing was greatly injured, his individual businesses and the capital stock of the Main Chevrolet Company in which he was interested, and the value thereof, were largely destroyed, from which he suffered much embarrassment and distress, to his individual damage in the sum of $50,000 actual damage, which includes the depreciation in the market value of the capital stock of the Main Chevrolet Company in the sum of $20,000. He alleged exemplary damages of $25,000 upon the ground that the acts, statements, insinuations, and declarations against him and his business standing were falsely, purposely and maliciously made in a reckless disregard of his rights and to his great humiliation, embarrassment, and mental distress, and he prayed for judgment for his damages, both actual and exemplary, and costs of suit, and general and special relief.

Some fifty-five of the multitude of special exceptions filed by appellees to the petition were sustained by the trial court; the basis of many of them being that it is shown from the petition that all of the wrongful and hurtful acts and conduct complained of occurred after the organization of the corporation known as Main Chevrolet Company, which took over the business of appellant at Borger under a new contract with appellees and at a time when appellant, as shown by the petition, was not engaged in any line of business, and it is therefore manifest that appellant is seeking to recover damages that could not have accrued to him individually, but accrued, if at all, to the Main Chevrolet Company, which is not a party to the suit.

It will be noted that a large portion of the damages claimed by appellant, in fact, all of the specific damages alleged and measured by him, consisted in the reduction in value of the capital stock owned by him in the Main Chevrolet Company. The exceptions, generally speaking, bring into question the right of appellant to recover such damages. It is a well-established rule of law that, in general, an action to redress or prevent injuries to a corporation cannot be maintained by a stockholder in his own name or right, nor by him in the name of the corporation itself. The fact that the acts complained of may have the effect of depreciating or destroying the capital stock does not change the rule, even though the majority or all of the capital stock may be held by the complaining stockholder. Stockholders are not permitted to prosecute such an action even though they unanimously join in it. An exception to the rule is recognized where the foundation of the action consists in some threat or contemplated course of dealing of the directors which transcends their authority under the charter or some fraudulent action or conduct on the part of those generally having authority to institute and conduct litigation on behalf of the corporation. Where a stockholder

seeks to bring himself within the exception, however, the action must be brought on behalf of the corporation. In no event are stockholders, individually, and for their own account, permitted to institute or prosecute such suits. Paramount Famous Lasky Corp. et al. v. Stinnett et al., Tex.Civ.App., 17 S.W.2d 125; Stinnett et al. v. Paramount-Famous Lasky Corp. et al., Tex.Com.App., 37 S.W.2d 145, 151.

■ There is established in the law an exception to the general rule which is stated in 14 C.J. p. 929, par. 1445, as follows: "The general rule does not prevent stockholders from suing to restrain or recover damages for wrongful acts which are not only wrongs against the corporation but also violations of duties arising from contracts or otherwise and owing directly to the injured stockholders."

Appellant seeks to bring himself within the provisions of this exception to the general rule, but in our opinion he has not succeeded in doing so, especially in so far as he seeks to recover damages for the reduction of the value of his capital stock in the Main Chevrolet Company. He has not shown a case in which there was a violation of duties arising from any contract in connection with his capital stock which were owing directly to him. The rule is not sufficiently comprehensive to include within such suits damages arising from wrongful acts merely because the acts complained of resulted in damage both to the corporation and to the stockholder. Such a suit is permitted only when the wrongs are such as to give to the stockholder personally a right of action. If the injuries complained of are such as to give to the corporation a cause of action upon damages occasioned to it, the stockholder has no right to bring suit therefor, but if there is a contract or other liability of which the stockholder personally is the beneficiary, the cause of action arises to him as would any other cause of action he might have under the same circumstances. The cases cited under the quoted text in Corpus Juris illustrate the conditions under which such suits may be brought. In the case of Fleming v. Reed, 77 N.J.L. 563, 72 A. 299, the plaintiff brought suit upon a contract which the defendant's testator, Moore, who was a stockholder in the corporation, had made with the corporation in which the plaintiff also held stock, that he would pay all of the debts and the par value of the stock to each stockholder if the company would sell and transfer to him and three other stockholders all of the lands belonging to the corporation. The corporation had complied with the contract, and plaintiff's suit was to recover of Moore's estate the par value of her capital stock in the corporation under the terms of the contract. The court held that the plaintiff, being a person for whose benefit the contract was made, was entitled to maintain the suit.

The case of Lovitt v. Illinois Surety Co., 88 Misc. 100, 150 N.Y.S. 609, was an action brought upon a bond given by the defendant to the "White Rats of America," a membership corporation of which the plaintiff was a member, whereby the defendant guaranteed the performance of all contracts of employment made with the members of the "White Rats" corporation, and, in addition, guaranteed the faithful performance by any theater owner, manager, or employer of all contracts made through Felix Reich Agency with any member in good standing of the "White Rats of America." The court held plaintiff was entitled to maintain the suit because the contract or bond was made for his benefit.

In the case of Meyerson v. Franklin Knitting Mills, 185 App.Div. 458, 172 N.Y.S. 773, the plaintiff and the Knitting Mills were the sole owners of capital stock of the Specialty Clothing Company, a corporation. They made a contract by which the Knitting Mills sold to Meyerson its stock in the clothing company and agreed as part of the consideration that it would furnish goods of a certain grade to the clothing company for a period of five years. It failed to comply with its contract to furnish the goods, and the material could not be procured from other sources, in consequence of which the capital stock purchased by Meyerson from the Knitting Mills became practically worthless. The contract which the Knitting Mills made with Meyerson was thereby violated and the court held Meyerson had the right to maintain the cause of action because it was upon a personal contract between him and the Knitting Mills.

The distinction between those cases in which the stockholder has the right to maintain such a cause of action and those in which he does not have such right is

clearly drawn in the other case cited in the footnote in Corpus Juris, supra, under the text, viz., White v. First National Bank, 252 Pa. 205, 97 A. 403. In that case the bank's conduct was such as to destroy the corporation and put it in bankruptcy, which would not have resulted if the bank had not violated its contract with the corporation. White, the principal stockholder, brought the suit in his individual capacity against the bank for the damages which resulted to him in the reduction in value of his capital stock in the corporation. The court held he could not maintain the suit, inasmuch as he was not endeavoring to recover on behalf of the corporation, but seeking a personal judgment.

Our own courts have laid down the rule in no uncertain terms which we think applies to this case. In the case of Paramount Famous Lasky Corporation v. Stinnett, supra, Chief Justice Gallagher, speaking for the Waco Court of Civil Appeals, held that although the acts and conduct of appellants were such as greatly to reduce the capital stock of the local corporation held by appellees, the corporation was still in existence, and while they were the officers and directors, they were not the corporation itself, and the subsequent acquisition by appellees of all except one share of the capital stock did not dissolve the corporation nor otherwise affect its legal status. The findings of the jury showed that the recovery awarded appellees was based solely upon the loss of profits which would have accrued if the operation of the theater had been continued until the end of the lease. The holding was to the effect that if such operation had been continued under such condition the profits realized therefrom would have belonged to the corporation and not to the stockholders individually. The cause of action for injury or destruction of the property of the corporation or the impairment or destruction of its business was a direct injury to the corporation and to the stockholders only remotely which necessarily invoked the rule, causa proxima non remota spectatur. Appellant alleged in the instant case that he was the owner of all of the capital stock of Main Chevrolet Company, but that did not change the rule that the corporation, and not the stockholders individually, is the proper person to bring a suit for damages resulting to its capital stock by wrongful acts and conduct in

violation of a contract with the corporation or other duties owing to it.

It is true a writ of error was granted in the Paramount Famous Lasky Corporation Case, but the holding of the Waco Court of Civil Appeals upon the question we are here discussing was not disturbed. The Commission of Appeals, speaking through Justice Sharp, discussed and recognized the rule here contended for by appellant, and held there were cases in which stockholders in their individual capacity could maintain suits involving capital stock held by them in corporations, but he observed that: "Since this case will be reversed and remanded for a new trial, we suggest that, in our opinion, plaintiffs have not, in the development of this phase of the case, sufficiently complied with the exceptions to the general rule herein stated."

Appellant cites us to the case of Brown v. American Freehold Land Mortg. Co., 97 Tex. 599, 80 S.W. 985, 67 L.R.A. 195, and states in his brief that his petition is drawn under and in accordance with the opinion in that case. We do not consider the Brown Case authority for appellant's contention in this case. That case holds, in effect, that the allegations of the plaintiffs, who evidently were partners, were not made for the purpose of recovering upon libel and slander, but the allegations of wicked and malicious acts and conduct of the defendants were alleged to have been made for the purpose of destroying the plaintiffs' business. The case is authority here, however, for the contention of appellant that he is not, in this case, seeking to recover upon libel or slander and, in so far as the damages claimed by appellant may have affected his businesses other than the value of his capital stock in Main Chevrolet Company are concerned, we agree with him that the suit could have been maintained if properly pleaded and confined to those items of damage, assuming that limitations or other impediments did not apply, a question which we do not deem it necessary to pass upon.

It is our conclusion, and we hold, that the gravamen of appellant's contention in this case is the assertion of a cause of action against appellees for wrongful acts and conduct which resulted in damage to him in the reduction in value of capital stock owned and held by him in a corporation which was in existence at

the time this suit was filed and is essentially a cause of action that rested solely in the corporation itself as long as it was in existence and had capacity to sue, and thereafter in its directors and stockholders as its representatives. The corporation was not a party to the suit, and all of his assignments of error which complain of the action of the trial court in sustaining exceptions to the petition upon that ground are therefore overruled.

The petition alleges damages which resulted to other businesses of appellant from the acts and conduct complained of. The only other businesses in which appellant was engaged, according to his petition, were that he owned the building in which the local corporation conducted the sales agency, and that he was loaning money, particularly had loaned the sum of $35,000 to appellee Acceptance Corporation. It is difficult to conceive of how such acts and conduct as are complained of by appellant could have in any manner affected him in his ownership and maintenance of the building. It is not alleged that such acts and conduct deprived him of a tenant nor reduced its value or prevented him from disposing of it. Likewise, no allegation is made which formed the basis of any damages resulting to his business of loaning money. The only business activity of this character alleged by him is that he had loaned $35,000 to the Acceptance Corporation, and the only basis for any damage which a court could have awarded to him as personal injury occasioned by the acts and conduct complained of is his allegation that his total damage amounted to $50,000, of which the reduction in value of his capital stock amounted to $20,000. To say the least, his claim for damages to his other businesses was so intermingled in the petition with his claim for damages in the reduction of his capital stock that the two could not have been separated. We think, therefore, the trial court ruled correctly in sustaining the special exceptions on that ground. It may be appellant could have separated his items of damage in such a way as that a cause of action could have been maintained for damages to his other businesses arising from the wrongful acts and conduct complained of, but the petition was not drawn in such manner as to enable the trial court to distinguish between them, and when special exceptions were sustained to it on that ground he declined to amend. There was, therefore, nothing left for the trial court to do ex-

cept to dismiss the case. The action of the court in doing so was, in our opinion, correct and proper.

Appellant's allegations to the effect that it was agreed that, notwithstanding the organization of the Main Chevrolet Company, there would be no liquidation and the business relations would continue in the future as they had been in the past, could not, under other allegations of the petition, avail appellant anything. He alleged, in effect, that the contract under which the relationship between him and appellees existed came to an end on the 23d of March, 1931, when the Main Chevrolet Company was organized as a corporation; that a new contract was then executed between the corporation and appellees and the business was thereafter continued by the corporation. If the relationship which had existed between appellant and appellees prior to that time was to continue, it would have amounted to a nullification and abrogation of the contract executed between Main Chevrolet Company and appellees, and would have been inconsistent with practically all of the other allegations in the petition. We think, therefore, the trial court was correct in sustaining exceptions to these allegations.

On February 4, 1935, long after this suit was filed and after limitation had matured against the suit in favor of the Main Chevrolet Company, appellant and his brothers, who had owned stock in the company, filed what they denominated a plea of intervention in which they alleged that none of them except appellant, either individually or as stockholders or directors of the company, had ever claimed any interest in the damages and cause of action herein alleged by appellant; that all of such damages and cause of action had vested in appellant from the inception thereof; and that the plea of intervention was presented in so far as may be necessary or proper on account of their having been stockholders, directors, and officers in the company, but that they never accepted any trust in connection with the company. They adopted all of the allegations of appellant, and prayed that such relief as is prayed for by appellant be granted. The plea of intervention was amended on May 6, 1936, and upon motion and exception of appellees it was stricken, and this action of the court is assigned as error. The nature of the plea of intervention was really a disclaimer on the part of J. R. and F. C. Cullum of any rights in the subject mat-

ter of the suit or of the corporation. To say the least, it did not have the effect of making the corporation a party to the suit, and we think was wholly unnecessary and ineffective for any purpose.

We have examined all of the assignments of error and propositions contained in appellant's briefs, and it is our opinion that the action of the trial court in sustaining the special exceptions was not erroneous. Inasmuch as the effect of the action of the court in sustaining them was practically to destroy the cause of action alleged by appellant, and appellant declined to amend, the action of the trial court in dismissing the case was correct.

We conclude that no error is shown by any of the assignments, and the judgment of the trial court is affirmed.