JOHN L. MOTLEY ASSOCIATES, INC.

v.

Robert RUMBAUGH, Norman H. Beck, Jr., and Beck Rumbaugh Associates, Inc.

Misc. No. 86–73.

United States District Court, E.D. Pennsylvania.

Sept. 1, 1989.

James Scarpone, Scarpone & Edelson, Newark, N.J., for debtor.

Paul R. DeFilippo, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for John L. Motley Assocs. Inc.

Fred Lowenschuss, Burlington, N.J., for Robert Rumbaugh.

Paul J. Winterhalter, Philadelphia, Pa., for Anthony Barone, Trustee.

Joseph W. Chandler by Paul I. Guest, Jr., King of Prussia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Pending before the court is John L. Motley's Amended Motion to Dismiss RICO Claim and the Answer on Behalf of Robert Rumbaugh to Amended Motion of John L. Motley to Dismiss RICO Claim. For the reasons which follow, Motley's amended motion to dismiss RICO claim will be granted. Additionally, the RICO claim pending against Norman Beck is also dismissed. Dismissal of the RICO claim pending against both these individuals closes this case and concludes this litigation.

On June 30, 1976, Norman H. Beck, Jr. ("Beck") and Robert Rumbaugh ("Rumbaugh") incorporated Beck–Rumbaugh Associates ("the Debtor Corporation") in the Commonwealth of Pennsylvania to sell office equipment and supplies as manufacturers' representatives. Beck owned 51% of the shares of the corporation and was Chairman of the Board, President and Treasurer. Rumbaugh owned 49% of the shares of the company and was Vice-president and Secretary.

On June 30, 1979, Beck agreed to purchase Rumbaugh's interest in the Debtor Corporation. Rumbaugh subsequently alleged corporate mismanagement, improper and wrongful actions and breach of the

purchase agreement by Beck. (Civil Action No. 79–3849, assigned to the Honorable John B. Hannum). A jury verdict was returned in that case on January 7, 1983. In response to interrogatories entitled "Plaintiff's Claim for Damages in the Nature of Payment for his Interest in the Corporation," the jury determined that Rumbaugh voluntarily ceased to be active in the corporation on June 30, 1979. There was an agreement that Beck would purchase Rumbaugh's shares in the corporation, Beck unilaterally breached that agreement and Rumbaugh was entitled to $135,109 from Beck personally for the breach of that agreement. The jury also determined that Rumbaugh was entitled to additional damages from Beck personally in the amount of $5,000 and $28,000 from the Debtor Corporation. Judgment was entered in favor of Rumbaugh and against Beck in the amounts of $135,109 and $5,000 and against the Debtor Corporation in the amount of $28,000 less a set-off in favor of the Debtor Corporation and against Rumbaugh in the amount of $8,154.

The district court granted Beck's post-trial motion to require Rumbaugh to surrender his shares in the corporation in order to execute on the $135,109 judgment against Beck, because

> the award necessarily includes the price that was agreed for the sale of the stock from Beck to Rumbaugh, as well as any consequential damages resulting from the breach. Therefore if [Rumbaugh] collects the award of $135,109 plus any interest owing, he will have been paid for his interest in the Debtor Corporation, Inc. and to retain his stock will result in double recovery.

*Rumbaugh v. Beck*, No. 79–3849 (E.D.Pa. June 1, 1983) (Hannum J.), *aff'd. mem.*, No. 87–1509, Slip Op. (3d Cir. February 25, 1987). The award entitled Rumbaugh to his interest in the corporation as of June 30, 1979, which was the date of the sales agreement. The district court determined that Rumbaugh retained legal ownership of 49% of the shares in the corporation until satisfaction of the judgment, but that Beck acquired equitable ownership as of the date of the agreement. Rumbaugh has yet to execute on this final judgment, but it is clear from the trial court decision, affirmed on appeal, that he will have to relinquish legal, as well as equitable, title to the shares upon satisfaction of the judgment.

John L. Motley Associates, Inc. ("Motley Associates") and John L. Motley ("Motley") had entered into an oral agreement in 1981 with Beck, on behalf of the Debtor Corporation, to serve as a manufacturer's representative for manufacturers then represented by the Debtor Corporation. Pursuant to that agreement, when Motley made sales to certain prior customers of the debtor corporation, a percentage of the commissions derived from those sales were to be paid to the Debtor Corporation on a decreasing downward scale over a five year period. Motley was performing under that agreement while Beck and Rumbaugh litigated their respective interests in the Debtor Corporation in the United States District Court for the Eastern District of Pennsylvania before the Honorable John B. Hannum; Rumbaugh had already ceased his activity with the Debtor Corporation. At first, commissions were remitted by manufacturers directly to the Debtor Corporation, but later manufacturers sent commissions earned directly to Motley. Rumbaugh, individually and as a shareholder, claimed the commissions on the ground that Motley and Beck had conspired to waste the assets of the Debtor Corporation. The Debtor Corporation claimed the commissions under the oral contract between Motley and Beck. In response to these competing claims, Motley deposited the commissions with the District Court of New Jersey and commenced an interpleader action in April, 1983.

On March 13, 1985, the Debtor Corporation filed a voluntary Chapter 7 petition in the Eastern District of Pennsylvania. The trustee removed the interpleader action to the Bankruptcy Court for the District of New Jersey. The action was then transferred to the United States Bankruptcy Court for the Eastern District of Pennsylvania. This court withdrew the interpleader action, in connection with appeals from decisions of the bankruptcy court. In a Memo-

randum and Order entered February 27, 1989, 97 B.R. 182, this court determined that the commission funds were an asset of the estate of the Debtor Corporation and should be distributed in the bankruptcy proceedings. This court held that Rumbaugh did not have standing to assert claims for the conversion of funds of the Debtor Corporation because such an action was derivative and all derivative actions passed to the trustee upon the filing of the bankruptcy petition.

Only RICO claims against Motley and Beck, asserted by Rumbaugh as cross-claims in his May 22, 1986 answer to the amended complaint in interpleader, now remain. Pursuant to an Order of this court dated February 27, 1989, Rumbaugh filed a RICO Case Statement. Motley has filed a timely motion to dismiss the RICO claim against him on grounds of lack of specificity, failure to make out a cause of action, estoppel, and lack of standing. Since Rumbaugh does not have standing to pursue RICO claims against either Beck or Motley, the RICO cross-claims will be dismissed.

In deciding a motion to dismiss, the allegations of the complaint and all reasonable inferences drawn from those allegations must be accepted as true and viewed in the light most favorable to the non-moving party. Dismissal is warranted only if the non-moving party can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987).

■ Rumbaugh asserts that the oral contract between Motley and Beck on behalf of the Debtor Corporation was a conspiracy to turn over the assets of the Debtor Corporation to Motley in order to dissipate the corporate assets and deprive Rumbaugh of his interest in them. The alleged predicate acts are mail and wire fraud by use of the mail and telephone to enter into the contract and to implement the conspiracy by directing manufacturers to make payments directly to Motley, not to the Debtor Corporation.

Rumbaugh must have standing to assert these RICO claims. In a private civil RICO action, the plaintiff must allege and prove that he has been "injured in his business or property by reason of [a RICO] violation." 18 U.S.C. § 1964(c). The Supreme Court has stated that a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1133 (3d Cir. 1988). In this instance, Rumbaugh's standing would be derived from either his status as a debtor of the corporation or a shareholder.

Following the jury verdict in Judge Hannum's case, judgment was entered in favor of Rumbaugh and against the Debtor Corporation in the amount of $28,000 less an $8,154 set-off. The amount the Debtor Corporation owed Rumbaugh was decreased subsequently by garnishment of certain sums reduction of the bill of costs against the Debtor Corporation. *See* Scholl Opinion, August 4, 1989, 103 B.R. 628, 631 n. 1. The total amount due Rumbaugh from the Debtor Corporation is $12,397.81, plus interest. *See* Scholl Opinion, August 4, 1989, 103 B.R. p. 631. Rumbaugh's debt has a first priority in the bankruptcy distribution of the assets of the Debtor Corporation; the net balance available for distribution is $140,476.64. It is clear that the money the Debtor Corporation owes Rumbaugh will be paid in full with including interest.

Since the Debtor Corporation's debt to Rumbaugh will be fully satisfied, Rumbaugh has no standing as a corporation creditor to assert a RICO action alleging dissipation of the corporate assets. If there has been dissipation, it has not harmed Rumbaugh in either his business or property; he will receive all money due him from the corporation in the distribution of the Debtor Corporation's bankrupt estate. As harm to business or property is a prerequisite to a RICO violation, Rumbaugh does not have standing to allege RICO violations based on his status as a creditor of the Debtor Corporation.

The only other basis for Rumbaugh's standing to assert a RICO count is as a shareholder of the Debtor Corporation. Rumbaugh continues to hold bare legal title to 49% of the shares of the Debtor Corporation. He still has the same choice he has had: to retain his shares and receive a percentage of the final distribution to shareholders of the bankrupt estate, if any, or to relinquish ownership of the shares and execute against Beck personally on the judgment against him. It appears that Rumbaugh intends to decline to execute on the final judgment against Beck in order to retain Beck–Rumbaugh shares and attempt to relitigate what has been previously determined by a jury and affirmed on appeal.

The issue is whether Rumbaugh as legal but not equitable shareholder can maintain a RICO action against Motley and Beck or whether the RICO action is derivative and vested in the trustee of Beck–Rumbaugh, Debtor. It is unclear what rights Rumbaugh retains as the legal, but not equitable, owner of shares of Beck–Rumbaugh but we will assume arguendo that Rumbaugh retains all the rights any other shareholder would have in the same circumstances.

■ Where an alleged wrong is primarily against a corporation, that is, where the alleged injury is to the corporation or its whole body of stock or property, the cause of action belongs to the corporation itself. The cause of action may be brought by a shareholder on behalf of the corporation.

> An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. The shareholder's rights are merely derivative and can be asserted only through the corporation. Although this rule does not apply in a case where the shareholder shows a violation of duty owed directly to him, diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.
>
> *Warren v. Manufacturers Nat. Bank of Detroit*, 759 F.2d 542, 544 (6th Cir.1985)

(quoting *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir.1981).

The general rule for determining whether an action asserts a direct or derivative claim is:

> If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action. On the other hand, if the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a stockholder is allowable, and a stockholder cannot sue as an individual. The action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.
>
> *In re Penn Central Securities Litigation*, 347 F.Supp. 1327 (E.D.Pa.1972) (quoting 13 W. Fletcher, Corporations § 5911 (1970)).

*See also* J. Moore, Federal Practice § 23.1.16[1] (2d ed. 1969).

■ In Pennsylvania the general rule is that an action to redress injuries to the corporation cannot be maintained by an individual shareholder, but must be brought as a derivative action in the name of the corporation. "An injury to a corporation may, to be sure, result in injury to the corporation's stockholders. Such injury, however, is regarded as 'indirect,' and insufficient to give rise to a direct cause of action by the stockholder." *Burdon v. Erskine*, 264 Pa.Super. 584, 401 A.2d 369, 370 (1979). Any diminution in the value of shares as a result of injury to the corporation is not sufficient ground for a shareholder to sue in his own right.

> A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corpo-

ration and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.

*Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir.1970).

*See also White v. First Nat. Bank of Pittsburgh,* 252 Pa. 205, 97 A. 403 (1916) (destruction of value of stock is only indirect injury; plaintiff cannot recover because that right is in the corporation). The only exception would be a shareholder who asserts that he has suffered an injury distinct from that suffered by the rest of the shareholders or the corporation itself.

■ Pennsylvania law recognizes that where a shareholder can establish an injury personal to himself and apart from any injury done to the corporation, he may bring a suit in his own name. *See Beeber v. Wilson,* 285 Pa. 312, 131 A. 854 (1926) (stockholder cannot recover unless he shows injury to himself individually, apart from injury to corporation in which he is a stockholder); *Korman Corp. v. Franklin Town Corp.,* 34 Pa. D. & C.3d 495 (Phl. Com.Pl.1984) (shareholder may bring suit in his own name if he can establish injury personal to himself and apart from injury to corporation). In this instance, Rumbaugh cannot allege an injury to him that is distinct from the injury either to the corporation or any other shareholder. Any dissipation of corporate assets would affect each of the shareholders in the same way and to the same extent. The fact that Rumbaugh had a judgment against Beck does not change his circumstances as a shareholder. His decision to hold his shares and recoup through the distribution of the bankrupt estate does not confer on him or his claim to the value of his shares a status distinct from that of the other shareholder. The fact that there are only two shareholders does not alter the fact the claim alleged by Rumbaugh is derivative. *See White,* 252 Pa. 205, 97 A. 403 (action by

principal stockholder had to be maintained as derivative action since harm was to corporation).

The RICO standing provision requires injury to a person's property or business by reason of the statutory violation. 18 U.S.C. § 1964. This circuit has not yet considered shareholder standing to assert RICO claims. The courts that have considered this issue have unanimously held that there is no shareholder standing to assert RICO claims where the harm to the shareholders is derivative of the harm to the corporation. *See Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 29–30 (1st Cir. 1987); *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.1986), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Crocker v. FDIC,* 826 F.2d 347, 349 (5th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988); *Gaff v. FDIC,* 814 F.2d 311, 315, *vacated in part on other grounds,* 828 F.2d 1145 (6th Cir.1987); *Carter v. Berger,* 777 F.2d 1173, 1175 (7th Cir.1985); *Sparling v. Hoffman Const. Co., Inc.,* 864 F.2d 635, 640 (9th Cir.1988).

The RICO count asserted by Rumbaugh alleges dissipation of the corporate assets. This is an injury done to the corporation itself rather than to any individual shareholder. The RICO injury asserted by Rumbaugh alleges a harm to the corporation and not a harm to Rumbaugh in his individual capacity. There is no independent shareholder standing to assert RICO claims where the harm to the shareholders is derivative of the harm to the corporation. This RICO action is derivative and belongs to the corporation.

When a corporation goes into bankruptcy, all corporate causes of action pass to the bankrupt estate and are enforceable only by the trustee in bankruptcy. Memorandum and Order, February 27, 1989; *Mitchell Excavators v. Mitchell,* 734 F.2d 129 (2d Cir.1984); *See also, Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) (fiduciary obligations of officers, directors and shareholders that normally are "enforceable directly by the corporation or through a stockholder's derivative action [are], in the event of bank-

ruptcy of the corporation, enforceable by the trustee."). Since the Debtor Corporation is in bankruptcy and the RICO count is a derivative cause of action, any RICO cause of action passed to the trustee in bankruptcy upon the filing of the bankruptcy petition. The trustee's right is exclusive and Rumbaugh has no standing to assert the RICO count on behalf of the corporation.

In conclusion, Rumbaugh does not have standing as a creditor of the Debtor Corporation to assert a RICO claim because the debt owed him will be fully satisfied by distribution of the bankrupt estate, so there is no valid claim of injury to him as debtor. His claim as shareholder alleges an injury on behalf of the corporation and is therefore a derivative claim. Rumbaugh does not have standing to allege a derivative action because that right vests exclusively in the trustee upon the filing of the bankruptcy petition. Rumbaugh cannot allege any particular injury to him that makes his action non-derivative or direct. Motley's motion to dismiss the RICO claim will be granted.

The RICO claim pending against Beck must also be dismissed because of Rumbaugh's lack of standing. Article III of the United States Constitution provides that the judicial power extends only to instances where there is a "case" or "controversy." To have a case or controversy requires that the individual asserting the claim have standing to request the adjudication of the particular issue. *See Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Since Rumbaugh does not have standing to assert this claim, there is no case or controversy, no justiciable issue and the court must dismiss the claim *sua sponte. See United States v. Storer Broadcasting Co.,* 351 U.S. 192, 197, 76 S.Ct. 763, 767, 100 L.Ed. 1081 (1956) (standing as an element of case or controversy is a limitation on the subject matter jurisdiction of federal courts and may be raised by a federal court *sua sponte.*)

### ORDER

AND NOW, this 31st day of August, 1989, upon consideration of John L. Mot-

ley's amended motion to dismiss RICO claim, Robert Rumbaugh's answer thereto, and for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. The Amended Motion of John L. Motley to Dismiss the RICO Claim is GRANTED.

2. The RICO claim pending against Defendant Norman Beck is also DISMISSED because Rumbaugh lacks standing to assert the claim and therefore there is no justiciable case or controversy.

3. For administrative purposes, this case is CLOSED.