**JEFFREY M. BROWN ASSOCIATES, INC.,**

v.

**ALLSTAR DRYWALL & ACOUSTICS, INC.**

No. CIV.A. 02–MC–15.

United States District Court, E.D. Pennsylvania.

April 2, 2002.

Roy S. Cohen, Nicole L. Herman, Edward T. DeLisle, Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Philadelphia, PA, for plaintiff.

K. Gerard Amadio, Venzie, Phillips & Warshawer, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This action has been brought before this Court on Petition of Jeffrey M. Brown Associates, Inc. to Vacate Arbitration Award and the Cross–Motion to Confirm Arbitration Award of Respondent, Allstar Drywall & Acoustics, Inc. For the reasons outlined below, the petition to vacate shall be denied and the motion to confirm shall be granted.

#### Background

This case has its origins in a contract which Petitioner (hereinafter "JMB") entered into with the Center for Nursing and Rehabilitation for renovations to one of its facilities located in Brooklyn, New York.

Thereafter, on or around June 18, 1998, JMB entered into a subcontract with Respondent Allstar Drywall & Acoustics, Inc. ("Allstar") whereby Allstar would furnish the labor, materials, equipment and other incidentals necessary to complete the drywall installation, rough carpentry work, taping and acoustical ceiling installation in exchange for payment by JMB of the sum of $880,000.

On or about October 8, 1999, JMB commenced suit against Allstar in the Court of Common Pleas of Philadelphia County for breach of contract and breach of warranty alleging that Allstar had failed to perform its obligations under the agreement and that this failure caused JMB to retain other subcontractors to finish the job costing it an additional $323,664. JMB further alleged that it overpaid Allstar for work which it did not perform in the amount of $312,104. Allstar counter-claimed against JMB, alleging that it was still owed the balance due on the revised contract price in the amount of $158,207 and that as a consequence of JMB's failure to perform its obligations under the agreement, Allstar incurred additional labor and other costs in the amount of $358,809.

In August, 2000, the parties agreed to submit their dispute to binding arbitration to be conducted in accordance with the rules of the American Arbitration Association and "other state and federal rules," and filed an Order to mark the Philadelphia action discontinued and ended. Following some nine hearings between August 21 and October 5, 2001, the arbitrator issued his decision on January 2, 2002 in which he found in favor of Allstar in the net amount of $173,341.[1] It is this award which JMB now seeks to vacate and Allstar seeks to confirm.

### Discussion

By its petition, JMB avers that the arbitration award should be vacated because the arbitrator erred in (1) not awarding JMB its attorneys' fees on its affirmative claims, (2) failing to find that the several partial releases barred Allstar's claims for an equitable adjustment, and (3) failing to find that Allstar's claim for inefficiencies was devoid of merit.

It is clear and the parties agree that this action is governed by the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et. seq. Confirmation and vacation of arbitration awards are determined under Sections 9 and 10 of the Act, which reads as follows in relevant part:

### § 9. Award of arbitrators; confirmation; jurisdiction; procedure

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse

---

1. Arbitrator Philip Inglis first found in favor of JMB on its claims for work not performed as per contract by Allstar in the amount of $70,941. Accordingly, Mr. Inglis essentially found that Allstar was originally entitled to recover some $244,282 from JMB. The arbitrator further denied JMB's request for attorneys' fees and costs in the amount of $198,373.69.

party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding....

**§ 10 Same; vacation; grounds; rehearing**

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights to any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.......

■ Some courts, including the Third Circuit Court of Appeals and others in this district, have also recognized additional, nonstatutory bases upon which a reviewing court may vacate an arbitrator's award under the FAA. *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287, 291, n. 2 (3d Cir.2001). Such additional grounds include where the award is "in manifest disregard of the law," or is not "fundamentally rational." *Id.*, quoting *Tanoma Mining*

*Co. v. Local Union No. 1269*, 896 F.2d 745, 749 (3d Cir.1990) and *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1134 (3d Cir.1972).

■ It is thus patently clear that judicial review of an arbitration award is extremely narrow and severely limited. *Coltec Industries, Inc. v. Elliott Turbocharger Group, Inc.*, Nos. Civ. A. 99–1400, 99–MC–36, 1999 WL 695870, at *3 (E.D.Pa. Sept.9, 1999), citing, *inter alia, Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., Ltd.*, 868 F.2d 52, 56 (3d Cir. 1989), and *Amalgamated Meat Cutters & Butcher Workmen of North America v. Cross Bros. Meat Packers, Inc.*, 518 F.2d 1113, 1121 (3d Cir.1975). A court may not overrule an arbitrator simply because it disagrees with the arbitrator's construction of the contract or because it believes its interpretation of the contract is better than that of the arbitrator. *News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir.1990). To be sure, district courts have very little authority to upset arbitrators' awards and an award will be properly vacated only if there is absolutely no support at all in the record justifying the arbitrator's determinations. *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995); *Personnel Data Systems, Inc. v. OpenPlus Holdings Pty Ltd.*, No. Civ. A. 00–MC–166, 2001 WL 52546 at *1 (E.D.Pa. Jan.18, 2001). Indeed, "manifest disregard of the law" means more than error or misunderstanding with respect to the law. Rather, "Manifest disregard of the law" encompasses situations in which it is evident from the record that the arbitrator recognized the applicable law, yet chose to ignore it. *Aetna Casualty and Surety Co. v. Dravo Corporation*, No. Civ. A. 97–149, 1997 WL 560134 at *1 (E.D.Pa. July 31, 1997). Other courts have held that the

"manifest disregard" principle means that the correct legal standard must have been so obvious that the typical arbitrator would readily and instantly have perceived it, the arbitrator must have been subjectively aware of that standard, and he must have proceeded to ignore that standard in fashioning the award. *Coltec,* 1999 WL 695870 at *5. Accordingly, as long as the arbitrator has *arguably* construed or applied the contract, the award must be enforced, regardless of the fact that a court is convinced that the arbitrator has committed a serious error. *United Transportation,* 51 F.3d at 379, quoting *News America Publications, supra.*

█ In this case, JMB argues that by refusing to award it counsel fees and to give credit for the partial releases, the arbitrator here manifestly disregarded both the language of the agreement between it and Allstar and the legal principle that a fact finder must enforce the clear and unambiguous terms of an agreement. Petitioner further claims that by improperly crediting the allegedly flawed testimony of Allstar's inefficiency expert witness, the arbitrator acted in manifest disregard of the law. In partial support for these arguments, JMB points to the arbitrator's written decision of August 1, 2001 which rejected its argument that Allstar's claim for an equitable adjustment was barred by the execution of partial releases during construction of the project:

> After careful review of all documents, including contract language and briefs written by each Counsel, I do not find that the process of signing partial releases, as part of the requisition payment process, during the construction of the project, bars respondent's request. I will agree with respondent's position that until the work is fully or nearly completed, assessment of impact of delays, work out of sequence, stacking of trades, limitation of work areas, and oth-

er affecting conditions that have an impact on productivity and schedule can not be properly calculated.

> I have studied the legal arguments stated within Claimant's brief and, although not an attorney, I do understand the strictness of legal interpretation contained therein. In my opinion, however, it appears that these cases take a very narrow view and would not take into consideration the complexity of the work in performance of the contract on this project.

> Considering the contract requirement for final payment, and that the subcontractor has not yet furnished to the contractor a full and complete release and discharge of all liens, claims and other demands relating to the subcontract work, including materials furnished and work performed with equipment used, and further considering that notices were made by the subcontractor to the contractor, I will allow damages relating to inefficiencies to be submitted in the Arbitration proceedings by the respondent.

█ Contrary to Petitioner's position, we find that this language evinces that the arbitrator carefully considered its legal arguments and the cited authority, but concluded that the caselaw on which JMB relied was not on point with the instant case. Likewise, we believe that the arbitrator acted within his purview in considering the testimony of Allstar's inefficiency witness, Mr. Munster. Indeed, our review of Mr. Munster's testimony indicates that he was quite ably cross-examined by JMB's counsel and it was therefore up to the arbitrator, as the finder of fact, to determine the weight, if any, to be given his testimony. Again, so long as there is some support in the record for the arbitrator's determinations, the award must be upheld. Given that we find that such suffi-

cient support exists here, we do not find that the arbitrator in this case manifestly disregarded the law in rendering his decision. Accordingly, the arbitration award shall be confirmed and the petition to vacate denied.

### ORDER

AND NOW, this day of April, 2002, upon consideration of Jeffrey M. Brown Associates, Inc.'s Petition to Vacate Arbitration Award and the Cross–Motion to Confirm Arbitration Award of Allstar Drywall & Acoustics, Inc., it is hereby ORDERED that the Petition to Vacate Award is DENIED and the Cross–Motion to Confirm the Arbitration Award entered on January 2, 2002 is GRANTED for the reasons set forth in the preceding Memorandum Opinion.