**In re ELCOM TECHNOLOGIES CORPORATION, Debtor.**

No. 98–13343.

United States Bankruptcy Court, E.D. Pennsylvania.

March 23, 2006.

Thomas E. Beach, Kennett Square, PA, for debtor.

Kurt Gwynne, Philadelphia, PA, U.S. Trustee.

Frederick J. Baker, Philadelphia, PA, trustee.

Opinion

STEPHEN RASLAVICH, Bankruptcy Judge.

*Introduction*

Before the Court is the Motion of the Official Committee of Unsecured Creditors and Kurt Gwynne, Trustee, for Confirmation of Arbitration Award. The Motion is opposed by American Dynasty Surplus Lines Insurance Company which asks that the award be vacated. For the reasons set forth below, the Motion will be granted.[1]

*Factual Background*

The arbitration award which the Trustee and Committee would have this Court confirm derives from litigation which those parties commenced against former officers and directors of the Debtor. *See* Adv. No. 98–0435. The Trustee and Committee[2] sued those individuals alleging breaches of fiduciary duties and other misdeeds. *See* American Dynasty's Response, Appendix, Ex. # 3. These fiduciaries would eventually settle with the Trustee and Committee agreeing to make cash payments and assigning their rights in the Debtor's director and officers liability policy (the D & O Policy). *Id.* Ex. ## 7, 8. The fiduciaries had filed indemnity claims with the Debtor's D & O carrier, American Dynasty, but those claims were denied. *Id.* Ex. # 4, Preliminary Statement. After two of the fiduciaries sued it for refusing coverage, American Dynasty sought a stay of proceedings and an order compelling arbitration. *See* Adv. No. 99–0951, Docket # 3. This set off a series of procedural maneuvers by the *Gwynne* Plaintiffs and

1. This Court has jurisdiction over this matter as most of the underlying causes of action in the underlying adversary proceedings constitute either core matters or arise under or are related to the main bankruptcy case. *See* Adv. No. 98–0435, Amended Complaint, ¶¶ 11–15; *see also* 28 U.S.C. § 157(b)(2)(A), (C), (H), and (O).

2. For ease of reference, the Court will collectively identify the Trustee and Committee as the "*Gwynne* Plaintiffs."

American Dynasty intended by each, it seems, to thwart the efforts of the other. Each litigant attempted to intervene in the lawsuit in which the other was a party: the *Gwynne* Plaintiffs opposed American Dynasty's request for arbitration and also sought to intervene in the fiduciaries' action against the insurer; likewise, American Dynasty sought to intervene in the *Gwynne* Plaintiff's case against the fiduciaries in order to file a motion to dismiss that complaint.[3] Once the fiduciaries extricated themselves by settling and assigning their rights under the D & O policy, this joined the dispute as between the *Gwynne* Plaintiffs and American Dynasty on the issue of insurance coverage. They eventually agreed to arbitration of these claims. The arbitrators, in turn, awarded the Trustee and the Committee approximately $1.6 million. Confirmation of that award is now sought in this Court.

*Analysis*

 The statutory predicate for the motion is found in the Federal Arbitration Act:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction over such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

9 U.S.C. § 9. There is a strong presumption under the FAA in favor of enforcing arbitration awards. *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 241 (3d Cir.2005). Judicial review of an arbitration award is extremely narrow and severely limited. *Jeffrey Brown Associates, Inc. v. Allstar Drywall, Inc.*, 195 F.Supp.2d 681, 684 (E.D.Pa.2002) *citing Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., Ltd.* 868 F.2d 52, 56 (3d Cir.1989). This deference is not without design. As another circuit court has recently explained:

> The Federal Arbitration Act (FAA) liberally endorses and encourages arbitration as an alternative to litigation. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir.2005); *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1288 (11th

---

**3.** This occurred after the Committee sought to recharacterize its claims as direct creditor claims. The Committee did that in order to defeat any argument that such claims were excluded from coverage under the D & O policy as a successor claims. And it was that very argument on which American Dynasty contends that it would have based a motion to dismiss had it been allowed to intervene. See generally, American Dynasty's Response, @ 8.

Cir.2005). The reasons for this strong, pro-arbitration policy are "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Caley,* 428 F.3d at 1367 (*quoting Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1440 (11th Cir. 1998) (internal quotation marks omitted)); *see also Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 125 n. 2, 121 S.Ct. 1302, 1314 n. 2, 149 L.Ed.2d 234 (2001) ("It was needed to 'enable business men to settle their disputes expeditiously and economically, and will reduce the congestion in the Federal and State courts.'") (emphasis omitted) (quoting Hearing on S. 4213 and S. 4214 Before a Subcomm. of the Senate Comm. on the Judiciary, 67th Cong., 4th Sess., 2 (1923)); *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 280, 115 S.Ct. 834, 842–43, 130 L.Ed.2d 753 (1995) ("[T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business alike, ... corporate interests [and] ... individuals.") (quoting S.Rep. No. 68–536, at 3 (1924) (internal quotation marks omitted and first alteration added)).

*B.L. Harbert International, LLC v. Hercules Steel Company,* 441 F.3d 905, 906–07, 2006 WL 462368 *1 (11th Cir.(Ala.)).

█ That is not to say, however, that arbitration awards are inviolate. Section 10 of the FAA delineates grounds for opposing confirmation of the award:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10a. But as the Third Circuit has explained:

[r]eview of arbitration awards under the FAA is "extremely deferential." *Dluhos v. Strasberg,* 321 F.3d 365, 370 (3d Cir. 2003). Vacatur is appropriate only in "exceedingly narrow" circumstances, such as where arbitrators are partial or corrupt, or where an arbitration panel manifestly disregards, rather than merely erroneously interprets, the law. *See id.; Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc.,* 773 F.2d 530, 533 (3d Cir.1985) (stating that error of law is insufficient basis for vacatur). Likewise, an arbitrator's "'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *See Major League Umpires Assoc. v. American League of Professional Baseball Clubs,* 357 F.3d 272, 279–80 (3d Cir. 2004) (*quoting Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001)).

*Metromedia Energy, Inc. v. Enserch Energy Services, Inc.,* 409 F.3d 574, 578 (3d Cir.2005). It is American Dynasty's position that the instant arbitrators decision is

subject to exception. According to American Dynasty, the award is the result of the panel's manifest disregard of settled bankruptcy law. Response, 13. Had the arbitrators applied the controlling authority, it argues, they would have reached a contrary outcome. *Id.* The Court's inquiry, then, is a narrow one: whether the arbitrators "manifestly disregarded" the applicable law in reaching their decision. As the Court explained following oral argument on the present motion, American Dynasty's position on this issue is exceedingly weak.

*What is the "Settled Bankruptcy Law" Which the Arbitrators Are Supposed to Have Disregarded?*

■ The legal premise of American Dynasty's opposition is that the Committee lacked standing to raise the derivative claims against the fiduciaries. Pennsylvania law recognizes a distinction between the corporation and its shareholders and creditors. *Barium Steel Corp. v. Wiley,* 379 Pa. 38, 46, 108 A.2d 336, 341 (1954). And it is that distinction which determines who has standing to prosecute a claim when it is the corporation which has suffered the harm:

> The legal fiction of corporate existence corresponds with the view that an injury to the corporate body is legally distinct from an injury to another person. Thus, it is well established, under Pennsylvania law, that where fraud, mismanagement, or other wrong damages a corporation's assets, a shareholder does not have a direct cause of action. *Burdon v. Erskine,* 264 Pa.Super. 584, 401 A.2d 369, 370–71 (1979) (citation omitted). Rather, it is the corporate body that suffers the primary wrong and, consequently, it is the corporate body that possesses the right to sue. *John L. Motley Assoc., Inc. v. Rumbaugh,* 104 B.R. 683, 686–87 (E.D.Pa.1989) (citations

omitted) (describing Pennsylvania law). Thus, "an action to redress injuries to the corporation cannot be maintained by an individual shareholder, but must be brought as a derivative action in the name of the corporation." *Id.* (citations omitted) (describing Pennsylvania law); *see also* 12 *Summary of Pennsylvania Jurisprudence Business Relationships* § 7:90 (2d ed.1993) ("creditors claiming a beneficial interest in the corporation ... may not [even] maintain a derivative action").

*In re Lafferty,* 267 F.3d 340, 348 (3d Cir. 2001). Nothing about bankruptcy changes this; the claims which would otherwise belong to the Debtor pass by succession to the Trustee and no one else. *Id.* Had the panel correctly applied this principle to the evidence American Dynasty argues, it would have found that all of the claims raised by the *Gwynne* Plaintiffs were excluded from coverage under the D & O Policy. Instead, it insists, the panel deliberately ignored controlling authority in reaching its decision. The Court looks at whether that, in fact, happened and concludes that it did not.

To answer the question, the Court begins by delving further into the standard for vacating an arbitration award. What, exactly, constitutes a "manifest disregard of the law"? One Court in this District has explained that the standard means

> more than error or misunderstanding with respect to the law. Rather, "Manifest disregard of the law" encompasses situations in which it is evident from the record that the arbitrator recognized the applicable law, yet chose to ignore it. *Aetna Casualty and Surety Co. v. Dravo Corporation,* No. Civ. A. 97–149, 1997 WL 560134 at *1 (E.D.Pa. July 31, 1997). Other courts have held that the "manifest disregard" principle means that the correct legal standard must

have been so obvious that the typical arbitrator would readily and instantly have perceived it, the arbitrator must have been subjectively aware of that standard, and he must have proceeded to ignore that standard in fashioning the award. [citation omitted]

*Jeffrey Brown,* 195 F.Supp.2d at 684–85. To the Court, it is evident that American Dynasty overlooks key language in the panel's decision, as it is quite clear from its conclusions that the panel considered the authority which American Dynasty maintains it ignored:

American Dynasty has not demonstrated that Exclusion J of its policy precludes *all* of the creditors' claims for coverage. As it is relying on an exclusion to deny coverage, the insurer bears the burden of proof that all of the creditors' claims fall within the "Insured v. Insured" provision of its policy. Under Pennsylvania law creditors have claims that may be brought directly in their own right against directors and offices who breach their fiduciary obligations to creditors *once the debtor company becomes insolvent. While we recognize that such claims are limited to those which arose subsequent to insolvency and do not otherwise belong to the company's Trustee in bankruptcy,* we cannot say on this record that American Dynasty has demonstrated that *all of the creditor claims* before us fall within these limitations.

Arbitrators' Award, Conclusions Reached, # 2, @ 24 (emphasis added). The foregoing makes plain that the panel found that the record before it simply did not demonstrate that all of the claims raised by the Gwynne Plaintiffs were barred because they belonged solely to the Bankruptcy Estate. As American Dynasty based its defense on that fact, it had the burden of proof on that point. The panel found that

it failed to carry that burden. To the panel, the record left open the possibility that some of the claims were cognizable direct creditor claims that arose *post-insolvency.* Under Pennsylvania law, as the panel understood it, creditors—such as the Committee—would have standing to raise such insolvency claims. *See Travelers Casualty and Surety Co. v. Irex Corp.,* 2002 WL 32351176 *3 (E.D.Pa.) (explaining that a fiduciary relationship develops between officers of the corporation and creditors of the corporation at the point the corporation becomes insolvent). On this point, the Court notes the panel's description of the "record" before it, and the scope of its inquiries:

As is apparent by the time which has passed since the parties 2002 agreement, it has taken more than three years to reach this point. During that time the parties conducted discovery, we issued nine procedural orders, entertained extensive briefing and argument on American Dynasty's motion to dismiss, held 6 days of hearings, accumulated a record of 1,568 pages of testimony covering 8 cases cited by the parties in their filings. The record in this matter, stacked end to end, covers more than five linear feet. As the size of this record suggests, there are many factual and legal disputes among the parties.

Panel Decision @ page 2 of 27.

 In its decision the panel does not always specify which fact or set of facts led it to reach the various conclusions which it did. This is perhaps understandable, given the voluminous record, but the panel's brevity hardly compels a finding that it subjectively considered what American Dynasty urged as controlling authority, and thereafter consciously or expressly ignored both the proffered authority, as well as those facts which American Dynasty insisted mandated a decision in its favor.

The very most which might possibly be maintained is that the panel erred. This Court need not even reach that question, however, as the law is clear that legal error or improvident fact finding will not support vacatur of an arbitration award.

In sum, the Court finds that the panel did not manifestly disregard applicable law as to standing, nor the distinctions between direct and derivative claims as relevant thereto. Rather, the panel considered such matters and found that the record made was insufficient to compel exclusion of *all* of the claims before it. There being no basis to disturb it, the arbitrators' decision will be confirmed.

An appropriate order follows.

### ORDER

AND NOW, upon consideration of the Motion of The Official Committee of Unsecured Creditors of Elcom Technologies Corporation (the "Creditors Committee") and Kurt F. Gwynne, Trustee for the Debtor, Elcom Technologies Corporation for Confirmation of the Arbitration Award, and all responses thereto, it is hereby ORDERED that the Motion is GRANTED. Judgment on the Arbitration Award is hereby entered in favor of the Creditors Committee and against American Dynasty Surplus Lines Insurance Company in the amount of Two Million Eighty–Five Thousand One Hundred and Sixty–Six Dollars and Thirty Cents ($2,085,166.30) (representing total sum of the Arbitration Award in the amount of $1,585,449 plus interest at the rate of six percent (6%) per annum from July 9, 2001 to the date of this Judgment, March 20, 2006). In addition, the Creditors Committee shall be entitled to post-Judgment interest at the legal rate applicable under 28 U.S.C. Sec.1961 and 40 U.S.C. Sec. 258.